No. 23-11751-JJ

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

———————

UNITED STATES OF AMERICA,
*Plaintiff/Appellee,*

v.

RENALDO HARRELL,
*Defendant/Appellant.*

———————

On Appeal from the United States District Court
for the Southern District of Florida

———————

INITIAL BRIEF OF APPELLANT
RENALDO HARRELL

———————

HECTOR A. DOPICO
Federal Public Defender
ANSHU BUDHRANI
Assistant Federal Public Defender
Attorneys for Appellant
150 West Flagler Street, Suite 1700
Miami, Florida 33130
Telephone No. (305) 530-7000

THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL CASE)

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

## United States of America v. Renaldo Harrell
## Case No. 23-11751-JJ

Appellant files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Budhrani, Anshu

Caruso, Michael

Dopico, Hector A.

Gonzalez, Juan Antonio

Harrell, Renaldo

Houlihan III, Raymond D'Arsey

Kirkpatrick, Lynn

Klco, Sara Michele

Krasnoff, Lauren Field

Lapointe, Markenzy

Matzkin, Daniel

Otazo-Reyes, Hon. Alicia M.

Torres, Hon. Edwin G.

United States of America

Waxman, Abbie D.

Williams, Hon. Kathleen M.

/s/ Anshu Budhrani
Anshu Budhrani

## STATEMENT REGARDING ORAL ARGUMENT

This appeal presents an issue of first impression in this circuit—and in this country—regarding a district court's failure to bifurcate a trial involving allegations of being a felon in possession of a firearm as well as an armed career criminal. The district court below was the only court in the entire country to refuse to bifurcate in such a case—post-*Wooden*. Its failure, now post-*Wooden* and *Erlinger*, constitutes reversible error. As such, Mr. Harrell respectfully submits that oral argument is necessary to the just resolution of this appeal, and will significantly enhance the decision-making process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ............................................................. C-1

STATEMENT REGARDING ORAL ARGUMENT ................................... i

TABLE OF CITATIONS ........................................................... iv

STATEMENT OF JURISDICTION ............................................... 1

STATEMENT OF THE ISSUES ................................................... 2

INTRODUCTION ................................................................. 3

STATEMENT OF THE CASE ..................................................... 5

I.    Course of Proceedings, Facts, and Disposition Below .................... 5

   A.    Course of Proceedings and Disposition Below ...................... 5

   B.    Facts .......................................................................... 8

II.   Standards of Review ........................................................ 11

SUMMARY OF THE ARGUMENT ............................................... 13

ARGUMENT AND CITATIONS TO AUTHORITY .............................. 15

I.    Mr. Harrell's Convictions on Counts 1 and 3 Must be Reversed Because the Evidence Adduced by the Government at Trial Was Insufficient to Prove Beyond a Reasonable Doubt that (A) Mr. Harrell Had Constructive Possession of a Firearm Found on the

Ground at Night Next to a Dumpster at the Back of a Convenience Store; and (B) the Firearm Was Possessed in Furtherance of Another Crime ................................................................................. 15

    A.    The Evidence Was Insufficient as to Counts 1 and 3 Because Mr. Harrell Was Not in Possession of the Firearm—He Was Merely Present Where a Firearm Was Ultimately Discovered ........... 16

    B.    The Evidence Was Also Insufficient as to Count 3 Because the Government Completely Failed to Prove that Mr. Harrell Possessed the Firearm Recovered "in furtherance of" the Alleged Drug Trafficking Offense Charged in Count 2 ......................... 22

II.    The District Court Erred When it Denied Mr. Harrell's Motion to Redact the Superseding Indictment and Bifurcate His Trial to Avoid the Extreme Prejudice of Having the Jury Learn About His Three Prior Convictions During the Guilt Phase of His Trial ...... 24

III.    Relatedly, the District Court Reversibly Erred By Imposing the ACCA Enhancement ....................................................................... 30

CONCLUSION ......................................................................................... 33

CERTIFICATE OF COMPLIANCE ......................................................... 34

CERTIFICATE OF SERVICE ................................................................. 35

# TABLE OF CITATIONS

**CASES**

*Bonner v. Prichard,*

    661 F.2d 1206 (11th Cir. 1981) ........................................................ 17

*Erlinger v. United States,*

    602 U.S. 821 (2024) ................................................ 3, 4, 13, 14, 28 - 32

*Sullivan v. Louisiana,*

    508 U.S. 275 (1993) ........................................................................ 32

*United States v. Beverly,*

    750 F.2d 34 (6th Cir. 1984) ............................................................ 20

*United States v. Blue,*

    957 F.2d 106 (4th Cir. 1992) .......................................................... 20

*United States v. Ceballos-Torres,*

    218 F.3d 409 (5th Cir. 2000) .......................................................... 24

*United States v. Ferg,*

    504 F.2d 914 (5th Cir. 1974) .......................................................... 19

*United States v. Harris,*

    608 F.3d 1222 (11th Cir. 2010) ...................................................... 12

*United States v. Hodges,*

    616 F. App'x 961 (11th Cir. 2015) ........................................................ 12

*United States v. Louis,*

    861 F.3d 1330 (11th Cir. 2017) ..................................................... 12, 15

*United States v. Madkins,*

    994 F.2d 540 (8th Cir. 1993) ................................................................ 21

*United States v. Mieres-Borges,*

    919 F.2d 652 (11th Cir. 1990) .............................................................. 17

*United States v. Nealy,*

    232 F.3d 824 (11th Cir. 2000) .............................................................. 12

*United States v. Pedro,*

    999 F.2d 497 (11th Cir. 1993) .............................................. 17, 18, 22

*United States v. Perez,*

    86 F.4th 1311 (11th Cir. 2023) ............................................................ 12

*United States v. Smith,*

    591 F.2d 1105 (5th Cir. 1979) .............................................................. 17

*United States v. Soto,*

    779 F.2d 558 (9th Cir. 1986) ......................................................... 20, 21

*United States v. Sweeting,*

    933 F.2d 962 (11th Cir. 1991) .............................................................33

*United States v. Timmons,*

    283 F.3d 1246 (11th Cir. 2002) ....................................................22, 23

*United States v. Troya,*

    733 F.3d 1125 (11th Cir. 2013) ........................................................12

*United States v. Walser,*

    3 F.3d 380 (11th Cir. 1993) .............................................................12

*Weaver v. Massachusetts,*

    582 U.S. 286 (2017) ........................................................................32

*Wooden v. United States,*

    595 U.S. 360 (2022) ........................................................................25

**STATUTES**

18 U.S.C. § 3231 ..................................................................................1

18 U.S.C. § 922(g)(1)...............................................................5, 15, 24

18 U.S.C. § 924(c)(1)(A) ...................................................................15, 16

18 U.S.C. § 924(c)(1)(A)(i).....................................................................5

18 U.S.C. § 924(e)(1)........................................................................5, 24

21 U.S.C. § 841(a)(1).............................................................................5

28 U.S.C. § 1291 ...................................................................... 1

**OTHER AUTHORITIES**

Oral Arg. Tr., *Erlinger v. United States*, 2024 WL 1311141, at \*\* 27–29

(U.S. Mar. 27, 2024) ............................................................ 32

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 18 U.S.C. § 3231, because the defendant was charged with an offense against the laws of the United States. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which confers jurisdiction on the courts of appeals from final decisions of the district courts. This appeal was timely filed on May 25, 2023 (DE 85) from the final judgment entered on May 24, 2023 (DE 84), disposing of all claims between the parties to this appeal.

## STATEMENT OF THE ISSUES

I.    Whether sufficient evidence was adduced at trial to prove beyond a reasonable doubt that Mr. Harrell (a) knowingly "possessed" a firearm found by a dumpster at the back of a convenience store; and (b) possessed that firearm "in furtherance of" a drug trafficking crime.

II.   Whether the district court erred in denying Mr. Harrell's motion to bifurcate his trial so that the jury would not be exposed to highly prejudicial information regarding his prior convictions during the guilt phase of his trial, in violation of *Erlinger* and his Fifth and Sixth Amendment rights.

III.  Whether the district court erred by imposing an ACCA-enhanced sentence supported only by a stipulation that Mr. Harrell was forced to enter into because of the district court's refusal to bifurcate—in violation of *Erlinger* and Mr. Harrell's Fifth and Sixth Amendment rights.

# INTRODUCTION

Renaldo Harrell's case stands alone. His trial was the only one in the entire country where the district court denied bifurcation *and* permitted the jury to decide both the § 922(g)(1) unlawful-firearm-possession question and the § 924(e) occasions question. Mr. Harrell, in an effort to avoid the inordinate prejudice that would ensue from enabling the government "to regale [the] jur[y] with the details of [his] past misconduct," *Erlinger v. United States*, 602 U.S. 821, 847 (2024) (quotation marks omitted), reluctantly entered into a stipulation regarding his prior convictions and the occasions question. But, prejudice still ensued, and infected every part of his trial. Because of the district court's erroneous decision to deny bifurcation, the government was allowed to reference Mr. Harrell's past misconduct throughout his trial—and missed no opportunity to so do—going so far as to begin its closing argument by describing Mr. Harrell as "a gun toting, drug slinging three time convicted felon." Unsurprisingly, the jury returned with a guilty verdict on all counts.

The consequences of the district court's decision to deny bifurcation reverberated throughout Mr. Harrell's trial and sentencing. The government used his prior convictions to bolster its weak case before the

jury, and Mr. Harrell was denied his constitutional right under the Sixth Amendment to have a jury determine—unanimously and beyond a reasonable doubt—whether his past offenses "differed enough in time, location, character, and purpose to have transpired on different occasions" as required by § 924(e). *Id.* at 840. Instead, Mr. Harrell was forced to choose between his right to a jury trial on the occasions question and his right to a fair guilt-phase trial before a jury that was not unduly prejudiced by the details of his past crimes. It did not have to be this way. As the Supreme Court in *Erlinger* made clear, in cases like Mr. Harrell's, "*[m]ost obviously*, a court can bifurcate the proceedings." 602 U.S. at 847 (emphasis added). And it should have here.

# STATEMENT OF THE CASE

## I. Course of Proceedings, Facts, and Disposition Below

### A. Course of Proceedings and Disposition Below

In November 2022, a federal grand jury sitting in the Southern District of Florida returned a superseding indictment charging Renaldo Harrell with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(e)(1) (Count 1); possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count 2); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 3). (DE 26.)

Prior to trial, Mr. Harrell moved to bifurcate the trial and redact his indictment—which included an allegation that Mr. Harrell had three previous convictions for a violent felony or a serious drug offense. (DE 43.) The government conceded that, post-*Wooden*, a jury, and not a judge, must determine whether Mr. Harrell had three prior convictions committed on different occasions. (*See* DE 49; DE 95:8.) The government, however, opposed Mr. Harrell's request to redact the indictment and bifurcate the trial, because doing so would impose a

"heavy burden" on the government and be an "extreme remedy." (*See id.* at 2 (quotation marks omitted); DE 95:10.)

The district court initially believed that *Wooden* had not altered the law in this Circuit whatsoever, before agreeing with the government that, while the jury must make the different occasions determination, bifurcation was not "appropriate." (DE 95:6, 11.) As a result, given the court's ruling, Mr. Harrell was forced to make an impossible choice—either allow the jury to hear the details of his prior convictions during his trial, or enter into a stipulation. (DE 95:11–12.) He agreed to the stipulation, which stated:

> The defendant, RENALDO HARRELL, has been convicted in a Florida state court of three previous felony offenses in Case Nos. F98-021064B, F02-030937B, and F02-37800A, and those three previous felony offenses all occurred on occasions separate from one another.

(DE 103:89; Gov't Ex. 18.)

During the course of the trial, the district court also reversed itself and decided to allow the government to admit snippets of a jail call purportedly between Mr. Harrell and an unknown individual known as "Joe." (DE 104:3–4.) The district court noted that it reconsidered its prior ruling denying the government's request "[i]n light of where [the court]

6

s[aw] the case going." (DE 104:4.) Task Force Officer Brent Speck then testified as to the meaning of a few words heard on the call—"piece" and "banger" mean firearm, and "dope" means drugs. (DE 104:148.)

After the government rested, Mr. Harrell moved under Fed. R. Crim. P. 29 for a judgment of acquittal on all counts. (DE 104:150.) More specifically, as to Counts 1 and 3, he argued that there was insufficient evidence that (a) he had "possessed" the firearm and (b) that it was possessed "in furtherance of" the charged drug trafficking offense. (DE 104:150.) The court denied the motion, finding that while there was "no direct evidence," the case could go to the jury based upon the government's theory of constructive possession, and because firearms are used in the sale of narcotics for protection. (DE 104:151.) Mr. Harrell renewed his motion after resting his case, which the court again denied. (DE 105:31–33.)

The jury returned a verdict of guilty on all counts. (DE 71.) Mr. Harrell was sentenced on May 16, 2023. He specifically objected to the facts in the PSI, which the district court acknowledged. (DE 106:3.) The district court then determined Mr. Harrell's total offense level to be 34 and his criminal history category to be VI, which amounted to an advisory

guidelines range of 262 to 327 months for Counts 1 and 2, and a mandatory minimum 60 months as to Count 3, which would run consecutive to Counts 1 and 2. (DE 106:3–4.) The court sentenced Mr. Harrell to a total sentence of 240 months—20 years—imprisonment, consisting of 180 months as to Counts 1 and 2 to run concurrently, as well as a consecutive 60 months as to Count 3. (DE 106:12; DE 84.) Upon release, he would be on supervised release for 5 years as to Counts 1 and 3, and 3 years as to Count 2, all to run concurrently. (DE 106:12; DE 84.)

Mr. Harrell timely filed a notice of appeal (DE 85), and is currently incarcerated.

### B. Facts

Officers were surveilling the M&A Market during the daytime on April 13, 2022. (DE 103:40–41.) Detective Nelson Rodriguez, who was undercover and dressed in civilian clothes, was stationed behind a fence facing the back alley of the market. (DE 103:40–45.) He observed a man—who he later identified as Renaldo Harrell—sitting in a lounge chair against the back wall of the market in the back alley. (DE 103:46.) He watched as individuals would approach Mr. Harrell on foot, have a brief conversation with him, shake his hand, and pass him money. (DE

103:46.)  He then observed Mr. Harrell stand up, go to the wall against which his chair was stationed, lean down, pick up a rock to access what was underneath, close his fist, and walk back towards the individuals. (DE 103:46.)  They would then shake hands and the individuals would leave.  (DE 103:46.)  Detective Rodriguez believed these to be hand-to-hand transactions for the sale of drugs.  (DE 103:48.)

He observed Mr. Harrell for about two hours, but did not approach him to make an arrest in that time.  (DE 103:48.)  His team was then called away to attend to another matter, so he left his surveillance post. (DE 103:48–49.)  He advised his squad of what he had observed, and they returned to the M&A Market later that night, at around 9PM.  (DE 103:49; DE 104:9.)  Detective Rodriguez had his partner, Detective Alejandro Garcia, drive him back to his previous surveillance spot, and, as they were driving, Detective Rodriguez claimed to observe Mr. Harrell engaging in a hand-to-hand transaction with another individual in a white truck.  (DE 103:51.)  At that point, he advised his squad to do a "takedown" because he had observed what he believed to be a hand-to-hand transaction for the sale of drugs.  (DE 103:52.)  No one involved was

given any information about the presence of any suspected firearms.  (DE 104:32.)

Detective Rodriguez approached the white truck to arrest the potential buyer, while Detective Garcia and Officer Joshua Rodriguez proceeded on foot to the back alley of the M&A Market to look for Mr. Harrell.  (DE 103:53, 59–60, 77; DE 104:132–33.)  Because it was so dark outside, Detective Garcia—dressed in plainclothes—and Officer Rodriguez—dressed in uniform—had to approach the back of the convenience store with blindingly bright flashlights.  (DE 103:69, 73; Gov't Ex. 3a at 00:20.)  It was only with the help of these flashlights that they were able to see that Mr. Harrell was seated in a folding chair at the backside of the building.  (Gov't Ex. 4a.)  They shined their flashlights on him, and, with their guns drawn and aimed directly at Mr. Harrell, they yelled at him, "yo, hands! Hey, let me see your f*cking hands!"  (Gov't Ex. 3a at 00:20.) They did not announce that they were police.  (DE 103:103; DE 104:32–33.)  Understandably startled and fearing for his own life, Mr. Harrell jumped out of his chair and took cover behind a dumpster.  (Gov't Ex. 3a at 00:22; Gov't Ex. 6a at 00:40.)  Seconds later, after realizing the individuals yelling at him were police, he complied and raised his arms

in the air as Detective Garcia grabbed him and placed him under arrest. (Gov't Ex. 3a at 00:28; DE 104:35.) Officers also placed another individual standing against that same back wall under arrest—a man in an orange hoodie. (DE 104:14.) Detective Garcia walked over to the back wall, lifted up a rock on the floor, and observed what he believed to be contraband underneath the rock. (DE 103:96.) The contraband was tested and determined to be crack cocaine and n-ethylpentylone, or bath salts. (DE 104:52, 57.) Officers also discovered a firearm on the floor next to the dumpster behind which Mr. Harrell had crouched for a second before putting his hands in the air and being placed under arrest. (Gov't Ex. 4d; Gov't Ex. 7f.) The firearm had nine rounds in the magazine. (DE 103:84–85.) Law enforcement tested the firearm for fingerprints and DNA, but neither came back as a match to Mr. Harrell. (DE 104:67–69, 99.)

## II. Standards of Review

This Court "review[s] *de novo* a district court's denial of a motion for acquittal. When considering claims regarding sufficiency of the evidence, we view the evidence in the light most favorable to the government. If the evidence viewed in the light most favorable to the

prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, then a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Louis*, 861 F.3d 1330, 1333 (11th Cir. 2017) (citations omitted).

This Court reviews a district court's denial of a motion to bifurcate for an abuse of discretion. *United States v. Hodges*, 616 F. App'x 961, 966 (11th Cir. 2015) (citing *United States v. Walser*, 3 F.3d 380, 385 (11th Cir. 1993)).

Finally, this Court reviews the district court's application of the ACCA enhancement *de novo*. *United States v. Harris*, 608 F.3d 1222, 1227 (11th Cir. 2010). It also reviews constitutional challenges to a sentence *de novo*. *United States v. Nealy*, 232 F.3d 824, 829 (11th Cir. 2000). "In cases of constitutional error where the issue has been properly preserved, the government has the burden of proving that the error was harmless beyond a reasonable doubt." *United States v. Perez*, 86 F.4th 1311, 1320 (11th Cir. 2023). However, "[s]tructural errors are structural defects . . . [that] defy analysis by harmless-error standards," and, thus, "structural errors require automatic reversal." *United States v. Troya*, 733 F.3d 1125, 1134 (11th Cir. 2013).

## SUMMARY OF THE ARGUMENT

The Sixth Amendment "place[s] the jury at the heart of our criminal justice system," whereby "at all times, the truth of every accusation against a defendant ha[s] to be confirmed by the unanimous suffrage of twelve of his equals and neighbors." *Erlinger*, 602 U.S. at 831 (quotation marks omitted). "These principles represent not procedural formalities but fundamental reservations of power to the American people." *Id.* at 832 (quotation marks and alterations omitted). Here, however, Mr. Harrell was convicted and subjected to decades of imprisonment based not upon sufficient evidence beyond a reasonable doubt, but instead upon the jury's knowledge of his three prior convictions.

First, the district court erred in denying Mr. Harrell's motion for a judgment of acquittal as to Counts 1 and 3. The evidence introduced at trial was wholly insufficient to show that Mr. Harrell constructively possessed the firearm recovered off the ground next to a dumpster in the back alley of a convenience store. Additionally, the government introduced no evidence that the firearm recovered was possessed in furtherance of the charged drug trafficking crime. As such, his convictions on Counts 1 and 3 must be reversed.

Second, Mr. Harrell's trial was infected with prejudice from start to finish because of the district court's erroneous denial of his motion to bifurcate. Mr. Harrell was the only defendant in the country forced to endure a trial wherein he had to choose between his right to a jury trial on the occasions question and his right to a fair guilt-phase trial before a jury that was not unduly prejudiced by the details of his past crimes. Faced with this impossible choice, he entered into a stipulation regarding his three prior offenses, which the government then constantly referenced throughout his trial. As a result, he should be granted a new trial.

Finally, the district court's erroneous denial of Mr. Harrell's motion to bifurcate denied him his constitutional right under the Sixth Amendment to have a jury determine—unanimously and beyond a reasonable doubt—whether his past offenses "differed enough in time, location, character, and purpose to have transpired on different occasions" as required by § 924(e). *Erlinger*, 602 U.S. at 840. The district court's error forced him to enter into a stipulation that then formed the basis of his ACCA-enhanced sentence. His enhanced sentence must be vacated.

## ARGUMENT AND CITATIONS TO AUTHORITY

**I.    MR. HARRELL'S CONVICTIONS ON COUNTS 1 AND 3 MUST BE REVERSED BECAUSE THE EVIDENCE ADDUCED BY THE GOVERNMENT AT TRIAL WAS INSUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THAT (A) MR. HARRELL HAD CONSTRUCTIVE POSSESSION OF A FIREARM FOUND ON THE GROUND AT NIGHT NEXT TO A DUMPSTER AT THE BACK OF A CONVENIENCE STORE; AND (B) THE FIREARM WAS POSSESSED IN FURTHERANCE OF ANOTHER CRIME**

When evaluating a sufficiency-of-the-evidence claim, this Court has made clear that "[i]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, then a reasonable jury must necessarily entertain a reasonable doubt." *Louis*, 861 F.3d at 1333. And this Court "must hold the government accountable to this burden." *Id.* at 1335. For "[w]hen a man's liberty is at stake, [the Court] must be vigilant with this burden" to "prove all elements of a crime beyond a reasonable doubt." *Id.* at 1331–32.

Here, the evidence was insufficient to support the convictions in Counts 1 and 3 because Mr. Harrell did not "possess" the firearm that was recovered within the meaning of 18 U.S.C. §§ 922(g)(1) and 924(c)(1)(A), and, as to Count 3, the government further failed to demonstrate that it was possessed in furtherance of another crime within

the meaning of § 924(c)(1)(A).  Accordingly, this Court should reverse both convictions.

### A. The Evidence Was Insufficient as to Counts 1 and 3 Because Mr. Harrell Was Not in Possession of the Firearm—He Was Merely Present Where a Firearm Was Ultimately Discovered

Both Counts 1 and 3 require knowing possession of a firearm—that is, for Count 1, the government must prove beyond a reasonable doubt that the individual charged "knowingly possessed a firearm," while for Count 3, the government must prove beyond a reasonable doubt that the individual charged "knowingly possessed a firearm in furtherance of" another crime.  (DE 67:10, 12.)  The question here is whether the government proved beyond a reasonable doubt that Mr. Harrell *knowingly possessed* the firearm law enforcement found.  The answer is no.

An individual may "constructively" possess a firearm under the law even if the firearm is not in his actual possession.  Constructive possession exists where a person has "the intent and the power to exercise dominion and control" over a firearm.  *United States v. Smith*,

591 F.2d 1105, 1107 (5th Cir. 1979).[1] "As such, a defendant must, in fact, know of the firearm's existence in order to exercise dominion and control over it." *United States v. Pedro*, 999 F.2d 497, 500 (11th Cir. 1993) (citing *United States v. Mieres-Borges*, 919 F.2d 652, 657 (11th Cir. 1990) (noting constructive possession requires "knowing exercise" or "knowing power or right to exercise dominion and control")). Moreover, "a defendant's mere presence in the area of an object or awareness of its location is not sufficient to establish possession." *Id.* at 500–01 (internal quotation marks omitted).

Here, the government failed to prove beyond a reasonable doubt that Mr. Harrell even knew about the firearm law enforcement officers found, let alone that he had both the intent and the power to exercise dominion and control over it. The government's evidence as to Mr. Harrell's purported possession of the firearm found by the dumpster is based upon nothing more than Mr. Harrell's presence in the area. Detective Nelson Rodriguez surveilled the back of M&A Market for hours during the daytime and never saw Mr. Harrell with a firearm, nor did he

---

[1] Decisions rendered prior to October 1, 1981, by the United States Court of Appeals for the Fifth Circuit, are binding as precedent on the Eleventh Circuit. *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981).

see Mr. Harrell approach the dumpster where the firearm was ultimately found. Mr. Harrell was also not the only individual hanging out at the back of the convenience store—other people were coming and going. Because Detective Rodriguez had to leave his surveillance post for several hours in the middle of the day to attend to an unrelated operation, he did not have eyes on the back of the convenience store—and the individuals who congregated there—for the entirety of the day.

When officers returned to M&A Market, it was after 9PM and dark outside. Detective Rodriguez again claimed to witness a hand-to-hand transaction between Mr. Harrell and another individual, but notably never saw a firearm. After Detective Garcia arrested Mr. Harrell at the back of the convenience store, Detective Garcia used his flashlight to look around and saw a firearm on the ground next to a dumpster. He used gloves to recover the firearm, and it was sent to the crime lab for a fingerprint and DNA analysis. Neither were a match to Mr. Harrell.

The government's evidence "proved no more than [Mr. Harrell's] mere presence in the vicinity of the gun, which is insufficient to constitute constructive possession." *Pedro*, 999 F.2d at 502 (internal quotation marks omitted). It asked the jury to infer that because a firearm was

found near where Mr. Harrell had been standing for a second or two, it belonged to Mr. Harrell, and he must have dropped it there. But the other evidence—or lack thereof—just does not support such an inference. Mr. Harrell had been surveilled during the course of the day, and no one observed him with a firearm or anywhere near the dumpster. Additionally, Mr. Harrell was not the only individual found in the back of the convenience store that night, and he was certainly not the only individual who had access to that area. The fact that a firearm was found near where he had been momentarily standing when he took cover from armed men he did not immediately recognize as police does not put him in constructive possession of the firearm. Finally, the fingerprints and DNA collected from the firearm were *not* a match with Mr. Harrell's fingerprints and DNA.

The government produced no evidence "showing ownership, dominion, or control over the [firearm] itself or the premises . . . in which the [firearm] [w]as concealed." *United States v. Ferg*, 504 F.2d 914, 916–17 (5th Cir. 1974) (citations omitted). Mr. Harrell's mere proximity to a firearm "goes only to its accessibility, not to the dominion or control which must be proved to establish possession." *United States v. Soto*, 779 F.2d

19

558, 560 (9th Cir. 1986) (reversing conviction for possession of three firearms found in a car in which defendant was riding even though two of the firearms were found behind defendant's seat and within his reach). The government failed to substantiate its case against Mr. Harrell. It produced no fingerprints, DNA, or any other physical evidence linking Mr. Harrell to the firearm; no evidence demonstrating that Mr. Harrell owned the firearm or testimony that he had been seen with the firearm; and the area in which the firearm was found was frequented by numerous other individuals that day alone. "Without more evidence then that proffered by the government," the facts presented "fall outside . . . the realm of the quantum of evidence necessary to support a finding of constructive possession." *United States v. Blue*, 957 F.2d 106, 108 (4th Cir. 1992) (reversing 922(g)(1) conviction where firearm found below defendant's seat in car and officers observed defendant's shoulder dip as though he were reaching under the seat as they approached the car); *see also United States v. Beverly*, 750 F.2d 34, 37 (6th Cir. 1984) (reversing conviction for insufficient evidence of possession where the evidence "establishes only that [the defendant] was in the kitchen[,] that [the defendant was standing close to a waste basket which contained two

firearms, and that [the defendant] had at some point touched one of the firearms," not that the defendant had constructively possessed the firearm beyond a reasonable doubt); *Soto*, 779 F.2d at 559–61 (reversing conviction for insufficient evidence of possession where evidence established "no more than the mere proximity of the weapons" to the defendant).

The government's evidence of possession is so lacking here that the "jury could only speculate" as to Mr. Harrell's guilt. That is, "[t]he evidence is such that a reasonably minded jury *must* have a reasonable doubt as to [Mr. Harrell's" knowledge or possession of the gun." *United States v. Madkins*, 994 F.2d 540, 542 (8th Cir. 1993) (emphasis in original) (quotation marks and citation omitted). Evidence admitted at trial "must do more than merely raise suspicion or possibility of guilt." *Id.* (quotation marks omitted). That is insufficient, as was the government's evidence here.

As a result, this Court should reverse Mr. Harrell's Count 1 and 3 convictions because the government failed to meet its burden beyond a reasonable doubt as to knowing possession of the firearm recovered next to the dumpster behind the convenience store. *See Pedro*, 999 F.2d at

502 ("We believe, therefore, that it was not reasonable to conclude beyond a reasonable doubt that [the defendant] constructively possessed the firearm. Accordingly, an essential element of the crime for which [the defendant] was convicted is absent, and his conviction must be reversed.").

### B. The Evidence Was Also Insufficient as to Count 3 Because the Government Completely Failed to Prove that Mr. Harrell Possessed the Firearm Recovered "in furtherance of" the Alleged Drug Trafficking Offense Charged in Count 2

Count 3 must also be reversed for insufficient evidence because it requires a showing that the defendant possessed a firearm "in furtherance of" another crime. Sufficient evidence of that element is completely lacking here.

This Court previously analyzed the sufficiency of the evidence required to support a conviction for possession of a firearm "in furtherance of" a drug trafficking crime in *United States v. Timmons*, 283 F.3d 1246 (11th Cir. 2002). The Court concluded that, giving "furtherance" its plain meaning, a conviction "requires that the prosecution establish that the firearm helped, furthered, promoted, or advanced the drug trafficking." *Timmons*, 283 F.3d at 1252. But, "the

presence of a gun within the defendant's dominion and control during a drug trafficking offense is not sufficient by itself to sustain a § 924(c) conviction." *Id.* at 1253. And, neither is the testimony of a government expert witness that drug dealers frequently carry a firearm to protect themselves, as well as their drugs and money. *See id.* at 1252–53 (citing to the House Judiciary Committee's commentary regarding the amendment of § 924(c) to include "in furtherance of," wherein the Committee specifically noted that expert testimony regarding the link between drugs and guns without more—such as witness testimony connecting the defendant to the firearm more specifically—was insufficient to meet the "in furtherance of" test).

Here, the government introduced no expert testimony to satisfy 924(c)'s "in furtherance of" element, let alone any other type of evidence. In its closing, the government argued that it had met its burden of proving that Mr. Harrell possessed the firearm in furtherance of drug trafficking because Detective Williams testified that drug dealers usually carry firearms to protect themselves and their stash. (DE 105:44.) Detective Williams, however, never said that during his testimony.

This dearth of evidence linking the firearm to the alleged drug trafficking means the government completely failed to meet its burden of proving that the firearm recovered from the back of the convenience store was possessed by Mr. Harrell "in furtherance of" a drug trafficking crime. "Mere presence is not enough . . . . What is instead required is evidence more specific to the particular defendant, showing that his or her possession actually furthered the drug trafficking offense." *United States v. Ceballos-Torres*, 218 F.3d 409, 414 (5th Cir. 2000). No such evidence exists here. As such, the Court must reverse Mr. Harrell's Count 3 conviction.

## II. THE DISTRICT COURT ERRED WHEN IT DENIED MR. HARRELL'S MOTION TO REDACT THE SUPERSEDING INDICTMENT AND BIFURCATE HIS TRIAL TO AVOID THE EXTREME PREJUDICE OF HAVING THE JURY LEARN ABOUT HIS THREE PRIOR CONVICTIONS DURING THE GUILT PHASE OF HIS TRIAL

Mr. Harrell was charged in Count 1 with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (DE 26.) Count 1 further alleged that, pursuant to 18 U.S.C. § 924(e)(1), Mr. Harrell had three previous convictions for a violent felony or a serious drug offense, or both, committed on occasions different from one another. (DE 26.) That is, the indictment alleged that Mr. Harrell was an armed career

criminal. The indictment was amended to specifically allege that Mr. Harrell had three prior convictions committed on different occasions after the Supreme Court issued its opinion in *Wooden v. United States*, 595 U.S. 360 (2022). Post-*Wooden*, both Mr. Harrell and the government agreed that the Armed Career Criminal Act's different occasions requirement must be alleged in the indictment and found by a jury beyond a reasonable doubt.

But, that is where the parties' agreement ended. Mr. Harrell argued that his trial should be bifurcated to proceed in two phases—a guilt phase and a penalty phase—in order to avoid the grave prejudice that would inure to him from telling the jury about his three prior felony convictions.[2] (DE 43.) The government opposed such a request as an "unnecessary heavy burden upon prosecuting authorities and the courts" (DE 49:2), and argued instead that a stipulation was more appropriate (DE 95:10). The district court agreed with the government, finding that

---

[2] In a bifurcated trial, the jury first hears the evidence on the underlying § 922(g) offense (and other charged offenses, if any). Unless and until the jury returns a guilty verdict, no mention is made of the ACCA's occasions requirement. If the jury does return a guilty verdict, it then hears evidence regarding the occasions element and decides the matter.

bifurcation was not "appropriate." (DE 95:11.) In so finding, the court expressed doubts about the extent to which *Wooden* had even altered the law in this Circuit, and did not view the occasions clause issue as one that required a jury finding beyond a reasonable doubt in the first place. (DE 95:6, 8.)

As a result of the court's denial of bifurcation, Mr. Harrell was faced with a Hobson's choice between allowing the jury to hear the facts and circumstances surrounding his three prior felony offenses, or stipulating that he had three prior felonies that occurred on different occasions. Given the extreme prejudice that would result from exposing a jury to this otherwise-irrelevant evidence of his three prior convictions, Mr. Harrell entered into a stipulation. (DE 72-5, Gov't Ex. 18.)

That stipulation, however, did not alleviate the prejudice Mr. Harrell feared, because the government repeatedly referenced Mr. Harrell's prior convictions throughout the entirety of his trial. Irreparable (but predictable) prejudice ensued. In its opening statement, the government explicitly noted that the "evidence . . . w[ould] show that the defendant had been convicted of three previous felonies." (DE 103:18.) During trial, the government read the stipulation—explicitly

noting the case number of each prior conviction—into the record. (DE 103:89.) During its closing argument, the government opened with this now-notorious sentence: "Ladies and gentleman of the jury, this defendant, *a gun toting, drug slinging three time convicted felon* is no longer cloaked in the presumption of innocence, which is where he started at the beginning of the trial." (DE 105:33–34 (emphasis added).) The government then went on to reference Mr. Harrell's three prior felony convictions at least two more times, implicitly urging the jury to infer that because Mr. Harrell was a "three time convicted felon," he was guilty of the offenses charged. (DE 105:35, 38.) And the prejudice just kept on compounding because the jury was then once again exposed to Mr. Harrell's prior felony convictions when they were instructed, and again on the verdict form. (DE 105:85, 86; DE 71.) That Mr. Harrell had three prior felony convictions infected every part of his trial, and the government missed no opportunity to capitalize on that information and use it to gain an improper and highly prejudicial advantage. In a case that hinged on constructive possession, and where the evidence of possession was virtually nonexistent, the district court's refusal to

bifurcate enabled the government to essentially argue, if he did it three times before, he did it here.

We now know that the district court (and the government) got it wrong in denying Mr. Harrell's motion to bifurcate. In *Erlinger*, the Supreme Court unequivocally held that a jury, and not a judge, must determine whether a defendant's prior convictions were committed on separate occasions for ACCA purposes, because "the Fifth and Sixth Amendments do not tolerate the denial of that right." 602 U.S. at 834–35, 849. As a result, to mitigate against the prejudice of enabling prosecutors "to regale juries with the details of the defendant's past misconduct," the Supreme Court explicitly urged the lower courts to use the "traditional tool[]" of bifurcation. *Id.* at 847 ("Most obviously, a court can bifurcate the proceedings."). "[B]y sequencing and separating the jury's determinations" into a trial of two phases, "a court decreases the likelihood that a jury will be overpersuaded by the defendant's prior criminal conduct." *Id.* at 848. In fact, of particular importance to the Court was the government's concession at oral argument that "it has not 'been able to anticipate why it wouldn't agree to bifurcation,'" as well as data that "every jury trial but one"—*this one*—"has been bifurcated when

the jury was permitted to decide *both* the § 922(g) unlawful-firearm-possession question and the § 924(e) occasions question." *Id.* (emphasis in original).

In light of *Erlinger*, it is now obvious that something went very wrong here. The government opposed bifurcation even though it claimed to not "be[] able to anticipate as to why it wouldn't agree to bifurcation," and the district court so misunderstood the law that it balked at the idea that a jury, and not the judge, was responsible for making the separate-occasions determination, let alone that such information about prior convictions should, at a minimum, not be presented to the jury during the guilt phase of a trial. As a result, the prejudice and harm the Supreme Court warned of was on full display in this case—so much so that the government's inflammatory start to its closing argument was quoted by Justice Kavanaugh as a warning of the prejudice that would ensue were a jury tasked with deciding whether a defendant was eligible for a sentencing enhancement in a non-bifurcated proceeding: "As happened in one recent federal trial, the jury could hear a prosecutor's closing argument begin: 'Ladies and gentleman of the jury, this

defendant, a gun toting, drug slinging three time convicted felon' . . . The verdict in that case? Guilty." *Id.* at 868 (Kavanaugh, J., dissenting).

The prejudice Mr. Harrell faced after the district court denied his motion to bifurcate is manifest. The Supreme Court in *Erlinger* recognized as much when it used this very case as an example of what not to do. The law is now clear that the district court should have bifurcated Mr. Harrell's trial because "[a]voiding the prejudice associated with the introduction of evidence of past crimes . . . require[s] careful attention, too." *Id.* at 849. As such, the Court should grant Mr. Harrell a new trial.

### III. RELATEDLY, THE DISTRICT COURT REVERSIBLY ERRED BY IMPOSING THE ACCA ENHANCEMENT

The district court's error in denying Mr. Harrell's motion to bifurcate compounded when the district court sentenced him as an armed career criminal. By denying his motion to bifurcate and forcing him to enter into a pretrial stipulation regarding his prior felony offenses, the court effectively denied Mr. Harrell his Sixth Amendment right to have "the truth of every accusation against [him] . . . be confirmed by the unanimous suffrage of twelve of his equals and neighbors." *Erlinger*, 602

U.S. at 831 (internal quotation marks omitted). As a result, his ACCA-enhanced sentence must be vacated.

The Supreme Court in *Erlinger* made clear that a defendant is "entitled to have a jury resolve ACCA's occasions inquiry unanimously and beyond a reasonable doubt." *Id.* at 835. Inherent in that holding is a defendant's right to present a jury with "evidence about the times, locations, purpose, and character" of the alleged prior convictions—and to confront the government's evidence of the same—so that the jury can decide whether "some or all occurred on different occasions." *Id.* Here, when the district court erroneously denied Mr. Harrell's motion to bifurcate, forcing him to stipulate, the court "erred in taking that decision from a jury of Mr. [Harrell's] peers." *Id.* Consequently, the "Executive Branch" was not held to its burden "to prove its charges to a unanimous jury beyond a reasonable doubt," which "mitigate[s] the risk of prosecutorial overreach and misconduct." *Id.* at 832. The district court's error deprived Mr. Harrell of his rights under the Sixth Amendment, which represents not just a "procedural formalit[y] but [a] fundamental reservation[] of power to the American people." *Id.*

Because the "effects" of the Fifth and Sixth Amendment error under *Erlinger* are "simply too hard to measure," *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017), the error should be treated as structural. Notably, during oral argument in *Erlinger*, Justice Gorsuch asked whether failing to subject the different-occasions question to the Constitution's jury-trial requirements constituted structural error. *See* Oral Arg. Tr., *Erlinger v. United States*, 2024 WL 1311141, at ** 27–29 (U.S. Mar. 27, 2024); *cf. Sullivan v. Louisiana*, 508 U.S. 275, 281–82 (1993) (holding that the deprivation of the right to a jury verdict beyond reasonable doubt is structural error). And, significantly, the *Erlinger* majority refused to accede to the dissent's position advocating for affirmance on grounds of harmless error, and instead underscored that it could not say whether a jury would have found Erlinger's prior offenses had been committed on different occasions if presented with the type of evidence *Wooden* requires to resolve that "fact-laden task." 602 U.S. at 833–34.

Therefore, at a minimum, because the district court's erroneous denial of Mr. Harrell's motion to bifurcate had reverberating effects, including an ACCA-enhanced sentence that was imposed in violation of *Erlinger*, the Court should vacate Mr. Harrell's ACCA-enhanced sentence

and remand for a resentencing without application of the ACCA. *Cf. United States v. Sweeting*, 933 F.2d 962, 967 (11th Cir. 1991) (holding that where a defendant entered into a stipulation under a mistake of law, such stipulation could not then be used to "improperly bind" the defendant "for the separate issue of sentencing under the enhancement provision of the statute").

## CONCLUSION

For the foregoing reasons, Mr. Harrell respectfully requests that this Court reverse his Count 1 and 3 convictions, vacate his sentence, and remand for a new trial.

Respectfully submitted,

HECTOR A. DOPICO
Federal Public Defender

*/s/ Anshu Budhrani*
ANSHU BUDHRANI
Assistant Federal Public Defender
Attorneys for Appellant
150 West Flagler Street, Suite 1700
Miami, Florida 33130
(305) 530-7000

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 6,431 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Century Schoolbook 14-point font.

*/s/ Anshu Budhrani*
Anshu Budhrani

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 29th day of October 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and sent seven copies to the Clerk of the Court via third-party commercial carrier for delivery within three days. I also certify that the foregoing document is being served this day via CM/ECF on Daniel Matzkin, Assistant United States Attorney, 99 N.E. 4th Street, Miami, Florida 33132.

*/s/ Anshu Budhrani*
Anshu Budhrani
